UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERT ACOSTA MORALES, <br> Plaintiff, <br> v. <br> CAROLYN W. COLVIN, <br> Commissioner of Social Security, <br> Defendant. | NO. EDCV 14-134 AGR <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Gilbert Acosta Morales filed this action on January 22, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 7, 8.) On November 13, 2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed issue. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.
## PROCEDURAL BACKGROUND

On October 1, 2010, Morales filed applications for disability insurance benefits and supplemental security income, alleging an onset date of October 16, 2009. Administrative Record ("AR") 12, 129-37, 153-56. The applications were denied initially and on reconsideration. AR 12, 63-66. Morales requested a hearing before an Administrative Law Judge ("ALJ"). AR 81-83. On May 16, 2012, the ALJ conducted a hearing at which Morales and a vocational expert testified. AR 24-62. The ALJ held the record open for Morales to attend a consultative internal medicine evaluation and to take x-rays of his hands and knees. AR 60. A consultative evaluation, including x-rays, was performed on June 27, 2012. AR 232-45. On September 4, 2012, the ALJ issued a decision denying benefits. AR 12-20. On November 25, 2013, the Appeals Council denied the request for review. AR 1-4. This action followed.

# II.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the

evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A.  Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.  The ALJ's Findings

The ALJ found that Morales meets the insured status requirements through March 31, 2013.  AR 14.

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Morales has the following medically determinable impairments: type 2 diabetes mellitus, hypertension, hyperlipidemia, history of stroke without residuals, and obesity.  AR 14.  Morales' impairments are not severe.  AR 15.

### C.  Physical Impairments

Morales contends the ALJ erred at step two in finding his physical impairments not severe.

At step two of the sequential analysis, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work.  *Lounsburry*, 468 F.3d at 1114.

duration requirement.  20 C.F.R. § 404.1520(a)(4) (ii);  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months.  *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 404.1508; 20 C.F.R. § 416.908.  "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[2] *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen*, 80 F.3d at 1290 ("[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and quotation marks omitted).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted).  Step two is "a *de minimis* screening device [used] to dispose of groundless claims" and the

---

[2] The ability to do basic work activities includes "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," "[c]apacities for seeing, hearing, and speaking," "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers, and usual work situations," and "[d]ealing with changes in a routine work setting."  *Yuckert*, 482 U.S. at 168 n.6 (citation and internal quotation marks omitted);  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

4

ALJ's finding must be "clearly established by medical evidence." *Id.* at 687 (citations and internal quotation marks omitted).

At step two, the ALJ found Morales does not have an impairment or combination of impairments that has significantly limited, or is expected to significantly limit, the ability to perform basic work-related activities for 12 consecutive months. AR 14-15. Therefore, Morales does not have a severe impairment or combination of impairments. AR 15.

Morales contends that he has physical impairments and limitations that constitute severe impairments. He argues that his writing is shaky because his hands shake all the time. When he last worked in 2009, he almost passed out from heatstroke and became "real shaky." AR 33. His knees and hands ache, and he has had fatigue problems since December 2011. AR 34. Sitting, standing or bending for too long causes fatigue. AR 42. He has numbness in his thigh and feet, and a tingling and burning sensation in his right shoulder down to his hand. AR 35-37. He can use a hammer, but not for "a length of time." AR 43.

Substantial evidence supports the ALJ's determination that Morales' physical impairments are not severe. A consultative orthopedic surgeon examined Morales and could make no orthopedic diagnosis. AR 208. A consultative internist examined Morales and found no functional restrictions. AR 236.

The ALJ found that the objective medical evidence suggested that Morales' symptoms and limitations were not as severe as alleged. AR 17. Regarding the type 2 diabetes mellitus, Dr. Eriks, a consultative examiner, found no evidence that Morales suffered any end organ damage, acidosis, or diabetes-related visual impairment. AR 17, 236. Morales had no significant problems with his vision, kidneys, hands or feet. AR 17, 236. Although Morales had mildly decreased light touch and vibratory sense in the soles of both feet, these were mild symptoms and did not have a significant impact on his ability to ambulate, as

5

evidenced by his normal gait and his ability to clean the house, walk the dog, and go shopping. AR 17, 236. Thus, the diabetes mellitus was nonsevere. AR 17.

Regarding the hypertension and hyperlipidemia, the ALJ noted that the hypertension had not caused renal insufficiency, cerebrovascular accident or retinal damage. AR 17, 236. Although there was a history of a silent myocardial infarct in the past, physical examinations showed the heart had regular rate and rhythm without gallops or murmurs, no heaves or thrills, and point of maximal impulse not displaced. AR 17, 234, 236. On June 27, 2012, Morales described his chest pain as being intermittent, occurring "every now and then." AR 17, 232. Dr. Eriks opined that the pressure over Morales' chest was not related to physical exertion or angina pectoris. AR 17, 235. The ALJ found that the hypertension and hyperlipidemia were nonsevere. AR 17.

Regarding obesity, the ALJ noted that there was no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning. AR 18. The ALJ concluded that Morales' weight has not affected Morales' ability to perform basic work activities. AR 18.

Regarding the history of stroke without residuals, the ALJ found that the impairment was only a slight abnormality and did not affect Morales more than minimally. AR 18. The record indicated no treatment for the condition, and indicated that the condition was stable/unchanged and well-controlled. AR 18, 196-99.

Regarding the arthritis in the hands, the June 27, 2012 x-ray study of the bilateral hands showed early osteoarthritis, 1st metacarpophalangeal joint and distal interphalangeal joints of the fingers.[3] AR 18, 243. Minimal spurring from articular margins was noted, joint spaces were maintained, and soft tissues were

---

[3] Although the ALJ did not list arthritis in the hands as a medically determinable impairment, she discussed it in the decision with the medically determinable impairments. AR 14, 18.

6

unremarkable. AR 243. Dr. Eriks diagnosed early osteoarthritis, 1st metacarpophalangeal joint and distal interphalangeal joints of the fingers in the right and left hands. AR 18, 235. Grip strength was normal, and there was normal gross and fine motor function of the bilateral hands and all fingers. AR 18, 234. The ALJ found the arthritis nonsevere, considering that Morales had only early osteoarthritis, normal findings, and could play video games and wash dishes. AR 18.

The ALJ gave great weight to the assessments of the State Agency medical consultants and the consultative examiners. AR 19, 204-09, 212-13, 230-36. The State Agency medical consultants concluded that Morales was physically nonsevere. AR 212-13, 230-31. Similarly, Dr. Eriks opined that Morales has no restrictions or special limitations in the areas of lifting, carrying, standing, walking, or sitting. AR 19, 236. He has no postural, manipulative, visual, communicative or environmental limitations. AR 19, 236. Dr. Sophon, a consultative examiner in orthopedics, found no orthopedic diagnosis and opined that Morales does not have significant physical impairment and has no functional limitations. AR 208. The ALJ found that the assessments were supported by the objective medical evidence and were consistent with the record as a whole, including Morales' activities of daily living. AR 19. The record does not contain an assessment from a treating physician.[4] Morales does not contend that the ALJ erred in weighing the medical assessments.

To the extent Morales contends that the ALJ erred in her credibility assessment, his claim fails. The ALJ found that Morales' activities of daily living

---

[4] The medical evidence consists of 61 pages, including four exhibits of State Agency and consultative examination reports. AR 185-245. The treatment records consist of approximately 20 pages from December 2008 through April 2009, and 12 pages from March 2010 through January 2012. AR 185-203, 219-29. The treatment records indicate acute bronchitis; no diabetic retinopathy; pain in rib; diabetic hyperlipidemia, controlled; type 2 diabetes mellitus, uncontrolled (due to non-compliance); stable chest imaging; and visits for medication refills. AR 185-03; 219-29.

were not consistent with his alleged degree of impairment. AR 16. Morales argues that his activities of daily living are not inconsistent with sedentary or light activity.[5] However, Morales makes no argument that his activities of daily living are inconsistent with medium work or non-restricted work. An ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc).

The ALJ found that Morales did not comply with treatment and could have sought low or no cost treatment alternatives. AR 16. Morales argues that the ALJ should have questioned him at the hearing about his inability to obtain medical treatment. However, Morales testified that he "save[s] up" to go to the doctor and goes "when the medicine runs out because I let it go one time and, you know, I told you the doctor got mad with me because everything went out of control." AR 47-48. Treatment notes indicate that Morales' compliance issues were not limited to one time. AR 220, 223-24, 226-27, 229. Further, Morales' compliance issues were not limited to medication noncompliance. Morales also failed to adhere to his treatment plan by not following his diet and not checking his blood sugar. AR 198-99, 222. The ALJ could reasonably interpret the evidence as showing that Morales was not compliant with his treatment plan. "[U]nexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a relevant factor in weighing a plaintiff's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ found that the objective evidence did not support the severity of the alleged symptoms. AR 16-17. As discussed above, the ALJ properly identified and discussed the objective evidence that undermined Morales' complaints. Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor

---

[5] Morales argues that he would be found disabled under the Grids, given his age and work experience, if he establishes that he is limited to light work.

8

that an ALJ may consider in assessing credibility.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ found that the lack of more aggressive treatment suggests that Morales' symptoms and limitations were not as severe as alleged.  AR 17.  Morales argues that it is unclear what aggressive treatment is available for his impairments.  Even assuming the ALJ erred in discounting Morales' credibility based on conservative treatment, remand is not warranted because the ALJ's remaining reasoning and ultimate credibility determination are valid.  *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008).  The ALJ did not err.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: January  30, 2015

ALICIA G. ROSENBERG
United States Magistrate Judge